[Crim. No. 5726. Third Dist. Nov. 5, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLARD RHOADES, Defendant and Appellant.

## COUNSEL

John D. Barr, under appointment by the Court of Appeal, for Defendant and Appellant.

George F. Duke, Richard B. Collins, Jr., Lee J. Sclar and Robert J. Donovan as Amici Curiae on behalf of Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Loren E. McMaster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PIERCE, P. J.**—Defendant-appellant was found guilty of violation of Public Resources Code section 4291.[1] That section, so far as it is pertinent herein, requires any person who owns or controls any building in, upon or adjoining forest-covered lands to maintain a firebreak of a specified width around a building by removing flammable growth therefrom. (*Id.*, subd. (a).) Section 4021 makes the wilful violation of section 4291 a misdemeanor. Defendant was convicted in the Justice Court of Burney Judicial District, Shasta County. The appellate division of the Shasta County Superior Court reversed the conviction. Reversal was not based upon any lack of evidence. Facts were conceded. There was no contention of other error—except one. Defendant is an Indian; the premises involved are Indian trust lands. The reversal in the superior court was based upon the court's holding that section 4291 does not apply to Indians living upon Indian trust lands. This matter reaches us through certification under California Rules of Court, rule 61 et seq.

The federal government, and therefore Congress, has exclusive original jurisdiction over Indians and Indian trust lands. The jurisdiction rests fundamentally upon the provisions of article I, section 8, subdivision 3, of the United States Constitution which, among the powers granted to Congress, includes the power to regulate commerce with the Indian tribes. That seemingly slender reed (originally) has become an all-encompassing, impregnable, exclusive jurisdiction over all Indian affairs—by "long-continued legislative and executive usage and an unbroken current of judicial decisions." (41 Am.Jur.2d, Indians, § 50, p. 858.) "It is [however] within the power of Congress to provide that the laws of a state shall extend over and apply to Indian country." (*Id.*, § 63, p. 868.)

Public Law 280 (Act of August 15, 1953, 67 Stats. 588, 18 U.S.C. § 1162) provides that certain states, of which California is one, shall have jurisdiction over offenses committed by Indians in certain Indian country. The trust lands on which the offense with which Rhoades was charged had

---

[1]All code references herein, unless otherwise specified, are to the Public Resources Code.

been committed (Big Bend Rancheria) lie within that country. That statute, however, provides "[n]othing in this section shall authorize the alienation, *encumbrance,* or taxation of any real or personal property . . . belonging to any Indian. . . ." (Italics ours.) It was the position of the Shasta County Superior Court that the requirements of section 4291 constitute an encumbrance. We do not so regard it.

■ Putting to one side the applicability of the section to persons—householders, if you will—other than Indians, it cannot be questioned that section 4291 is a valid exercise of the state's police power. It is the regulatory measure designed to preserve California's forests from conflagration. "Police power" has been described simply as the power of sovereignty to govern—the inherent reserved power of the state to subject individual rights to reasonable regulations for the general welfare. (See *Western Indem. Co.* v. *Pillsbury* (1915) 170 Cal. 686 [151 P. 398], and generally 3 Witkin, Summary of Cal. Law (7th ed.) Constitutional Law, § 158, p. 1968, and cases there cited.) ■ Where the police power is legitimately exercised, uncompensated submission is exacted of the property owner if his property be either damaged, taken or destroyed. (*Gray* v. *Reclamation Dist. No. 1500* (1917) 174 Cal. 622, 638 [163 P. 1024].) In the *Gray* case it was held that a temporary, prospective, possible inconvenience to a property owner during the process of the construction of a great statewide flood control project which when completed would be of great benefit not only to landowners as a whole *but to the plaintiffs in particular* was a proper exercise of the police power. Similarly, it can be said that the maintenance of an area free from combustible materials around buildings in forests is quite as much (if not more) for the benefit of the householder whose building or buildings will be directly involved as for the public at large. With that preliminary observation we turn to the specific question.

At the outset we note that the problem is one of statutory interpretation. By use of the word "encumbrance" in 18 United States Code section 1162 what did Congress intend? ■ Starting with the premise that this law like all federal Indian laws must be construed in the manner most favorable to Indians (*Elser* v. *Gill Net Number One* (1966) 246 Cal.App.2d 30, 36 [54 Cal.Rptr. 568]; *Alaska Pacific Fisheries* v. *United States* (1918) 248 U.S. 78, 89 [63 L.Ed. 138, 141, 39 S.Ct. 40]; *Choate* v. *Trapp* (1912) 224 U.S. 665, 675 [56 L.Ed. 941, 946, 32 S.Ct. 565]; *Arenas* v. *Preston* (9th Cir. 1950) 181 F.2d 62, 66), Rhoades places principal reliance upon *Snohomish County* v. *Seattle Disposal Co.* (1967) 70 Wn.2d 668 [425 P.2d 22], in which the Supreme Court of Washington held zoning ordinances to be an encumbrance upon Indian lands within the meaning of 28 United States Code section 1360 (identical in its provisions in the respects

material here with 18 U.S.C. § 1162). It was a divided decision. The majority opinion defined "encumbrance" as "any 'burden upon land depreciative of its value, such as a lien, easement, or servitude, which, though adverse to the interest of the landowner, does not conflict with his conveyance of the land in fee.' " That definition accords with comprehensive definitions of "encumbrance" in the legal sense as contained in words and phrases definitions of the standard works on American law (see e.g., 42 C.J.S., Incumbrance or Encumbrance—Legal Sense, p. 549). We doubt if even a definition as broad as that one would cover the restrictions of section 4291.

▇▇▇ As we view it, it would not be a burden upon Rhoades' land "depreciative of its value" to require that it be so maintained as not to be a hazard to forest lands in general and to Rhoades' lands in particular. We prefer the more common sense approach of dissenting judge Hale and the other dissenting judges in *Snohomish*. The dissenting opinion says (on pp. 27-28): "The broad general meaning employed by the majority . . . is not called for by the statute. The term 'encumbrance' should be given its more . . . precise meaning—one denoting a burden on the land and affecting the title thereto or one impairing the power of alienation such as a mortgage, lien, easement, lease, or other disability to fee ownership." In short, this court takes the position that by "encumbrance" Congress intended to protect the Indian against his own profligacy—against those who throughout history have exploited the Indian. And we direct attention to the fact that in Public Law 280 the word "encumbrance" (in the restrictive sentence referred to above) is used in the same series as the word "alienation."

The brief of amicus curiae, "California Indian Legal Services," says on page 5 that the type of restriction embraced in Public Resources Code section 4291 "is anathema to traditional Indians like Willard Rhoades. It makes his land less valuable to him in both monetary and non-monetary terms." To the observation that to Mr. Rhoades his lands may seem intrinsically less valuable we can make no judgment. We have observed above that with the first term—"monetary value"—we disagree. On pages 10 and 11 comforting intelligence is conveyed: "This [i.e., right of Indians to disregard section 4291] need not expose everyone else to a fire hazard. The federal government may, if it considers natural vegetation a fire hazard, subject Indian reservations to section 4291 and similar laws. . . ." Meanwhile, we infer, the citizens of California and elsewhere must—while they await action by the federal government—suffer to see the forest and grass-lands destroyed, as 400,000 acres were laid waste by fire in California recently at a cost of millions of dollars and a loss of irreplaceable trees. We take judicial notice that both accidental and uncontrolled debris burning around habitations is the source to which many forest fires can be traced.

We are not to be understood as singling out Indians or Indian rancherias as offenders. We do not accept the proposition, however—advanced particularly by amicus curiae—that Congress by its use of "encumbrance" intended to give Indians or Indian trust lands (alone among a state's inhabitants) a free ticket to endanger the state's forest and grass lands, an interpretation of the restrictive clause of Public Law 280 which is strained and unnecessary.

Neither do we find that section 4291 as applied to Indians violates due process—which is a second line trench argument advanced but without cognizable worth.

The judgment of the Shasta County Superior Court is reversed. The judgment of the Justice Court of Burney Judicial District is affirmed.

Regan, J., and Mundt, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 28, 1971.

---

*Assigned by the Chairman of the Judicial Council.