[Civ. No. 28294. First Dist., Div. Three. Feb. 24, 1971.]

PAUL DONAHUE, Plaintiff and Appellant, v.
THE JUSTICE COURT FOR THE KLAMATH-TRINITY JUDICIAL
DISTRICT OF HUMBOLDT COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

558

## COUNSEL

George F. Duke, Richard B. Collins, Jr., Lee J. Sclar, Robert J. Donovan, and William P. Lamb for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Robert R. Granucci, Deputy Attorneys General, for Real Party in Interest and Respondent.

## OPINION

**BROWN (H. C.), J.**—This is an appeal from the order denying a petition for a writ of prohibition by the Superior Court of Humboldt County seeking to prohibit the Klamath-Trinity Judicial District of Humboldt County from proceeding with the trial of appellant who is charged with violating California Fish and Game Code sections 8603 and 8686 (possession and fishing with a gill net with a mesh larger than 1¾ inches).

When appellant was arrested for violating the Fish and Game Code, he was fishing on a river within the Hoopa Indian Reservation. The Fish and Game Code provides that it is not applicable to California Indians whose names are inscribed on the tribal rolls while on the reservations of such tribe. (Fish & G. Code, § 12300.) *Appellant is an Indian but his name does not appear on the tribal rolls of the Hoopa Valley Tribe,* although his wife and his children's names are inscribed on the official rolls.

Two questions are before us: First, did the act of Congress of April 8, 1864 and the Order of President Ulysses S. Grant of June 23, 1876 (which acts created the Hoopa Indian Reservation) and U. S. Public Law 280 (18 U.S.C.A. § 1162, which transferred the basic law enforcement and criminal jurisdiction from the U. S. government to the state) authorize the state to prosecute an Indian who is not a member of the Hoopa Tribe from fishing on its reservation in a manner violative of the California Fish and Game Code? Second, did Public Law 280 prohibit California from depriving the Hoopa Tribe of the right to authorize nonHoopa Indians to fish on its reservation with immunity from the provisions of the California Fish and Game Code?

We have concluded that both questions must be answered in the affirmative.

The property rights of the Hoopa Indian Tribe were established by the Executive Order of President Ulysses S. Grant on June 23, 1876. The order provided that the described land was set aside for Indian purposes. (1 Kappler, Indian Affairs, Laws and Treaties, p. 815; see also *Elser* v. *Gill Net Number One,* 246 Cal.App.2d 30 [54 Cal.Rptr. 568]; *Donnelly* v. *United States,* 228 U.S. 243 [57 L.Ed. 820, 33 S.Ct. 449], for historical background of establishment of the Hoopa Reservation.)

In 1953, the basic duty of law enforcement and criminal jurisdiction over Indian reservations was transferred from the federal government to certain states (California was included). The act (Pub. Law 280, act of August 15, 1953, ch. 505, § 2, 67 Stat. 588, 18 U.S.C.A. § 1162) provided that the State of California "(a) . . . shall have jurisdiction

over offenses committed by or against Indians in the areas of Indian country . . . to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, . . . and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory: . . . (b) Nothing in this section . . . *shall deprive any Indian or any Indian tribe, band, or community of any right, privilege, or immunity afforded under Federal treaty, agreement, or statute with respect to hunting, trapping, or fishing or the control, licensing, or regulation thereof."* (Italics added.)

The purpose of this legislation, which also included jurisdiction over civil causes of action, is set forth in House Report No. 848. The Legislature had two coordinate aims. "First, withdrawal of Federal responsibility for Indian affairs wherever practicable; and second, termination of the subjection of Indians to Federal laws applicable to Indians as such." (1953 U.S. Code Cong. & Admin. News, p. 2409.) There was, in addition, a need for more effective law and order enforcement on Indian lands. "Need for such legislation on a general, rather than limited basis is grounded on the following: These States lack jurisdiction to prosecute Indians for most offenses committed on Indian reservations or other Indian country, with limited exceptions. The applicability of Federal criminal laws in States having Indian reservations is also limited. The United States district courts have a measure of jurisdiction over offenses committed on Indian reservations or other Indian country by or against Indians, but in cases of offenses committed by Indians against Indians that jurisdiction is limited to the so-called 10 major crimes: murder, manslaughter, rape, incest, assault with intent to kill, assault with a dangerous weapon, arson, burglary, robbery, and larceny.

"As a practical matter, the enforcement of law and order among the Indians in the Indian country has been left largely to the Indian groups themselves. In many States, tribes are not adequately organized to perform that function; consequently, there has been created a hiatus in law-enforcement authority that could best be remedied by conferring criminal jurisdiction on States indicating an ability and willingness to accept such responsibility." (1953 U.S. Code Cong. & Admin. News, pp. 2411-2412.)

In compliance with the provisions of Public Law 280 prohibiting California from depriving Indians of any right, privilege or immunity afforded under federal statutes with respect to fishing or "the control, licensing or regulation thereof," the state enacted Fish and Game Code section 12300. This section provides that the provisions of the code are not applicable to "California Indians whose names are inscribed upon the *tribal rolls,* . . ." (Italics added.)

Prior to the passage of Public Law 280, California criminal laws were inapplicable to acts committed on Indian reservations by Indians or against Indians or property of Indians. (*Donnelly* v. *United States, supra,* 228 U.S. 243, 271-272 [57 L.Ed. 820, 832]; *Williams* v. *United States,* 327 U.S. 711, 714-715 [90 L.Ed. 962, 964-965, 66 S.Ct. 778].) The state had the right to prosecute nonIndians for crimes committed against non-Indians, although such crimes occurred on Indian land. (*United States* v. *McBratney,* 104 U.S. 621 [26 L.Ed. 869]; *Draper* v. *United States,* 164 U.S. 240 [41 L.Ed. 419, 17 S.Ct. 107].) Included within the jurisdiction of the federal government prior to Public Law 280 was the authority to prevent unauthorized persons from fishing on Indian reservations.

In the early case of *U. S.* v. *Sturgeon,* 27 Fed.Cas. 1357, the court said: "The president has set apart the reservation for the use of the Pah Utes and other Indians residing thereon. He has done this by authority of law. We know that the lake was included in the reservation, that it might be a fishing ground for the Indians. The lines of the reservation have been drawn around it for the purpose of excluding white people from fishing there, except by proper authority. It is plain that nothing of value to the Indians will be left of their reservation if all the whites who chose may resort there to fish. In my judgment, those who thus encroach on the reservation and fishing ground violate the order setting it apart for the use of the Indians, and consequently do so contrary to law." (P. 1357.)

While the reasoning of the court in *U. S.* v. *Sturgeon, supra,* relates to unauthorized use by *nonIndians,* it applies with equal force to Indians who are fishing on the Hoopa Reservation who are not members of the Hoopa Tribe and who have not been authorized by the Hoopa Tribe to fish on their reservation.

The general rule, in the absence of provisions to the contrary, is that the right of individual Indians to share in tribal property is dependent upon membership in the tribe. (*Halbert* v. *United States,* 283 U.S. 753, 762-763 [75 L.Ed. 1389, 1395-1396, 51 S.Ct. 613].) It is assumed, for the purpose of this proceeding, that nonHoopa Indians do not have fishing rights on the Hoopa Reservation and therefore, come within the general rule of *Halbert* v. *United States, supra.* We do not decide for whom this reservation was created. That issue is not presently before this court.

We have concluded that the California legislation which enacted the immunity provision of the Fish and Game Code (§ 12300) for Indians whose names were inscribed on the tribal rolls merely reiterated prior existing rights of tribal members. The State of California is not prohibited by federal law, past or present, from applying its fish and game laws to

nontribal Indians or others who come upon the Hoopa Reservation without authorization and that therefore appellant is amenable to the provisions of that code.

■ Appellant, however, contends that the immunities reserved to the Hoopa Tribe by the federal government and granted by the State of California by Fish and Game Code section 12300 apply to those persons (of which he is one) who have tribal authorization to fish on the reservation.

Although we find no express statute or cases as authority, we agree that such contention may be reasonably implied from both the Presidential Order of 1876 establishing the Hoopa Reservation and from Public Law 280 by which jurisdiction over this reservation was transferred from the federal government to California.

The Presidential Order of 1876, establishing the Hoopa Reservation, was "for Indian purposes." One of those purposes was the right to fish. When the federal government transferred the jurisdiction over Indians on Indian reservations to certain states by Public Law 280, it specifically provided that nothing in that section of the act shall deprive any tribal Indian of any right, privilege or immunity "with respect to . . . fishing or the control, licensing, or regulation thereof." A reasonable construction of this language is that the tribe may control the fishing, including the licensing of nonHoopa Indians to fish from streams on the reservation.

In *Alaska Pacific Fisheries* v. *United States,* 248 U.S. 78, 86 [63 L.Ed. 138, 139, 39 S.Ct. 40], the United States sought to enjoin a California corporation from maintaining fish traps on water adjacent to Annette Island, an area designated for an Alaska Indian reservation. The court said: "The fish-trap was erected . . . *without the consent of the Indians* or the Secretary of the Interior. . . ." (P. 87 [63 L.Ed. p. 140]; italics added.) The court, in granting the injunction preventing private persons or corporations from encroaching on territory reserved to Indians, implied that authority of such private corporation must emanate from the Indian tribe or the Secretary of the Interior. (See also *Metlakatla Indians* v. *Egan,* 369 U.S. 45, 56-57 [7 L.Ed.2d 562, 570-571, 82 S.Ct. 552], for the general proposition that 18 U.S.C.A. § 1162, protects rights given to Indians by statute respecting control and regulation of fishing on reservations.)

Similarly, the language of the provisions of 18 United States Code Annotated section 1165, "Whoever, without lawful authority or permission . . . goes upon any land [s] . . . that are reserved for Indian use, for the purpose . . . of fishing thereon, . . . shall be fined . . ." clearly

indicates that tribal permission may be given to others to fish on their reservation. The section refers to fishing on land belonging to Indians or Indian tribes. Here the reservation belongs to the Hoopa Tribe by Presidential Order and the Act of Congress of 1864.

Respondent contends that federal treaties and regulations dealing with Indians will not be deemed to preclude state jurisdiction in the absence of specific language compelling such a result. Respondent cites *Puyallup Tribe* v. *Dept. of Game*, 391 U.S. 392 [20 L.Ed.2d 689, 88 S.Ct. 1725], and *Kake Village* v. *Egan*, 369 U.S. 60 [7 L.Ed.2d 573, 82 S.Ct. 562], in support of this contention. Neither case is applicable as each pertains to state regulation of fishing on rivers located off the reservation. In fact, and contrary to respondent's contention, a more reasonable construction of Public Law 280 would require the state to point to an exception in the plain words of the statute which would authorize the state's interfering with the tribal right of "control, license or regulation" of fishing on the reservation. The argument that the licensing by the tribe of others to fish on the reservation is analogous to permitting the tribe to alienate the reservation property is not persuasive. Such argument ignores the all-inclusive wording of Public Law 280 which does not exclude permitting employing or licensing others to fish, and specifically prohibits the state from *prohibiting* its tribes licensing of fishing, hunting, trapping, etc.

It appears that the governmental policy is to encourage the tribal Indians to become self-sufficient in the development and commercial use of resources of the reservation. (See *Skeem* v. *United States*, 273 F. 93, leasing of water rights; *United States* v. *Powers*, 16 F.Supp. 155, 164, leasing of Indian lands; Water and Water Rights by Robert Clark, Vol. 2, § 145.1, p. 396; Oil and Gas Leases by Samuel H. Glassmire (2d ed.), Indian lands and leases, § 70, p. 270; We Talk, You Listen by Vine Deloria, Jr., for operation of tribal sawmills by Menominee Tribe of Wisconsin, pp. 153, 157.)

The prosecution of appellant also cannot be justified on the basis of the inherent reserved power of the state to subject individual's rights to reasonable regulation for the general welfare as in *People* v. *Rhoades*, 12 Cal.App.3d 720 [90 Cal.Rptr. 794]. There the defendant was convicted of violation of Public Resources Code section 4291 which required removal of flammable growth adjacent to a building on a reservation. Although defendant was an Indian and the premises were on Indian land, the safety of both Indian property and adjoining lands required that this police regulation be legitimately exercised.

The facts presently before us do not indicate the necessity for the legitimate exercise of police power, as in *Rhoades*. Fishing with a fish net (as

here) is at most merely some interference with the recreation or sport of fishing. The federal statutory provisions prohibiting the state from interfering with tribal fishing rights were undoubtedly based on the practical reason that the Indian was not usually engaged in fishing as a sport but as a source of food. Consequently, fishing with gill nets, rather than rod and hook, in order to accomplish this fundamental purpose may be a necessity.

It is to be noted that Mr. Justice Douglas (a recognized conservationist) in *Kake Village* v. *Egan, supra,* 369 U.S. 60, 81 [7 L.Ed.2d 573, 638], indicates that fishing with gill nets or hand lines is not condemned as is the use of fish traps. The State of California, in its blanket exemption of tribal Indians from the provisions of its fish and game laws, also did not deem it sufficiently important to except from its provisions in the interest of conservation the right of tribal Indians to fish with gill nets.*

By reason of the foregoing, it is concluded that the State of California has jurisdiction to prosecute persons not members of the Hoopa Tribe for violation of its Fish and Game Code on the Hoopa Reservation. ▮ Further, that permission to fish on the reservation given by tribal authorities to nontribal Indians is a complete defense to any such charge.

There is no evidence before us of the grant or licensing of appellant to fish on the Hoopa Reservation. That issue is for the trial court.

The order denying a petition for writ of prohibition is affirmed.

Draper, P. J., and Caldecott, J., concurred.

Petitions for a rehearing were denied March 26, 1971, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied April 29, 1971.

---

*This opinion is not intended to construe future jurisdiction of the federal government over the right to regulate fishing on the reservation. Congress may, of course, enact legislation limiting the right of the Indians' power to license others to fish on the reservation. Public Law 280 does not preclude this power. Likewise the state is not precluded from exercising its general police power under factual situations reasonably requiring the exercise of such power.