The **QUECHAN TRIBE OF INDIANS,**
Yuma, Arizona, Plaintiff,

v.

**Raymond ROWE, Sheriff of Imperial County et al., Defendants.**

**Civ. No. 72–56–GT.**

United States District Court,
S. D. California.

Oct. 19, 1972.

John R. Campbell, California Indian Legal Services, Escondido, Cal., Reid Peyton Chambers, Los Angeles, Cal., for plaintiff.

James H. Harmon, County Counsel, County of Imperial El Centro, for defendants.

Harry D. Steward, U. S. Atty., Keith E. McWilliams, Asst. U. S. Atty., amicus curiae.

## MEMORANDUM DECISION

GORDON THOMPSON, Jr., District Judge.

This is an action for declaratory and injunctive relief against the sheriff of Imperial County and three of his deputies. The defendants have moved to dismiss the complaint on the ground that the complaint fails to state a cause of action, and have submitted affidavits and exhibits in support thereof. Accordingly, pursuant to Rule 12(b), F.R. Civ.P., this motion will be treated as one for summary judgment under Rule 56. The plaintiff has filed a cross motion for summary judgment, also supported by affidavits and exhibits, alleging that there is no genuine issue as to any material fact, and that the plaintiff is entitled to judgment as a matter of law.

The *material* facts are not in dispute. Plaintiff Quechan Tribe of Indians resides on and is the governing body of the Fort Yuma Indian Reservation, located in Imperial County, California, near the town of Winterhaven, California. Plaintiff Tribe is organized under the Indian Reorganization Act of 1934, 48 Stat. 984, as amended, 25 U.S.C. §§ 461–479. Plaintiff Tribe's Constitution and By-laws were approved by the Secretary of the Interior on December 18, 1936. Plaintiff Tribe exercises all powers of self-government over the Fort Yuma Indian Reservation, as conferred by its Constitution and By-laws. Plaintiff Tribe's Constitution and By-laws provide for the adoption of ordinances "for the control of hunting and fishing upon the reservation." (By-laws Article XI)

Pursuant to its powers in the Constitution and By-laws, Plaintiff Tribe has adopted three ordinances to control hunting and fishing on its reservation. On April 18, 1939, it adopted Ordinance QT–4 Ft. Yuma, which provides for the issuance of tribal hunting, fishing and trapping permits. The ordinance provides that unless a person holds a tribal permit "no rifle of any calibre shall be permitted to be used on the Fort Yuma Reservation."

On April 19, 1960, the Quechan Tribal Council adopted Ordinance 5–60, which provides that non-Indians that attempt to hunt or fish upon reservation lands and that do not possess tribal hunting and fishing permits shall be guilty of a trespass and subject to arrest by a Tribal Officer.

On August 6, 1964, the Quechan Tribal Council enacted Ordinance 8–6–64, which provides that trespassers may also be referred to appropriate federal authorities for prosecution under 18 U.S.C. § 1165.

Alfred K. Buker is the Chief Game Warden of Plaintiff Tribe. His duties include the enforcement of Plaintiff Tribe's ordinances QT–4, 5–60, and 8–6–64. Warden Buker is also a Deputy Special Officer of the Bureau of Indian Affairs and is charged with the enforcement of 18 U.S.C. § 1165.

Defendant Raymond Rowe is the Sheriff of Imperial County. Defendant Frank James Moore is a Sergeant of the Imperial County Sheriff's Office and is in charge of the Sheriff's Substation in Winterhaven, California. Defendants Rufus Escalanti and C. D. Palomino are Deputy Sheriffs of the County of Imperial.

On September 3, 1971, during the Quechan Tribe's "Annual Dove Season," Warden Buker saw three non-Indian youths carrying firearms near the Yuma Main Canal on the Ft. Yuma Indian Reservation. These persons were not in possession of either State or Tribal permits to hunt, fish or trap. Warden Buker thereupon relieved these three persons of their weapons. Warden Buker believed that the activities of these three individuals were in violation of the three above ordinances and of federal law, specifically 18 U.S.C. § 1165. The three individuals were not arrested or taken into custody, but Warden Buker told them they could reclaim their weapons at the Quechan Tribal Headquarters.

The three youths reported this incident to the Imperial County Sheriff. Later on the same evening, Warden Buker was arrested by defendants Moore, Escalanti and other employees of the Imperial County Sheriff's Office. He was transported to the nearby Winterhaven Substation. At the substation, Warden Buker was charged with violating California Penal Code § 487 (Grand Theft). Approximately two hours later he was released. No criminal prosecution is now pending against him.

Although there is some dispute as to some of the underlying facts of the arrest and the alleged trespassing of the three youths, those facts are not material to a resolution of this purely legal and jurisdictional dispute.

The Plaintiff Tribe alleges that the defendants are interfering with the Indians' enforcement of their hunting rights, and that unless this Court declares the rights and obligations of the parties, the Tribe will be unable to enforce its ordinances because of the threat of state criminal prosecution. They seek a declaration of their rights, and an injunction against future interference with those rights.

The issue before the Court concerns the jurisdiction of federal, state and Indian authorities over Indian tribal lands. To what extent can state law enforcement authorities enforce state criminal laws on Indian lands? To what extent can the Plaintiff Tribe enforce its own hunting and fishing laws without interference from state authorities?

■ This Court's jurisdiction is based upon 28 U.S.C. §§ 1331 and 1362. The Court has jurisdiction over the parties. The answers to the questions must be found by interpreting the relevant statutes. 18 U.S.C. § 1152 provides that federal criminal laws apply to Indian lands except where otherwise expressly provided by law. 18 U.S.C. § 1162(a), passed as part of Public Law 280 in 1954, relinquishes criminal jurisdiction over Indian lands located in California to the state. Section 1162(c) provides that Section 1152 does not apply in areas where Section 1162(a) establishes exclusive state jurisdiction. Therefore, California through both state and local law enforcement agencies, has exclusive authority over criminal matters on Indian lands.

But there is an important exception to this, provided as part of the same statute. Section 1162(b) is a *savings* clause which provides that the grant of jurisdiction to the states does not and cannot conflict with Indian rights specifically mentioned therein:

Nothing in this section . . . shall authorize regulation of the use of such [Indian] property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall deprive . . . any Indian tribe, band or community of any right, privilege, or immunity afforded under any Federal treaty, agreement or statute with respect to hunting, trapping, or fishing or the control, licensing, or regulation thereof.

■ Accordingly, if an Indian tribe has been given the right to hunt, trap, or fish or to control, license, or regulate hunting, trapping, or fishing by any federal treaty, agreement, or statute, Section 1162(a) does not deprive the Indian tribe of that right. If there is a *conflict* between an Indian law and a state law, the state law is unenforceable on Indian land.

This proposition has been judicially recognized in the courts of the State of California and in federal courts. In every case in which the Indians have been able to show that some federal treaty, agreement, or statute has given them such rights, and where the Indians have passed laws in furtherance of those rights, any conflicting state laws have been held to be unenforceable.

In Donahue v. Justice Court, 15 Cal. App.3d 557, 93 Cal.Rptr. 310 (1971), the Court implied that the state has jurisdiction to enforce its hunting laws on Indian lands, but that the Indians have

the superseding power to authorize hunting and fishing which may violate state law. If there is such authorization, that is a complete defense to state criminal prosecution. If Congress has given the Indians authority to enact certain laws, and those laws conflict with state laws, the Indian laws prevail.

Arnett v. Five Gill Nets, 20 Cal.App. 3d 729, 97 Cal.Rptr. 894 (1971), although decided on other grounds, recognized that a state Fish and Game Code provision cannot be enforced if it conflicts with a federally created Indian right to fish, and hunt.

This principle was also recognized in Menominee Tribe of Indians v. United States, 391 U.S. 404, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968), in which the Supreme Court held that state hunting and fishing laws are inapplicable where they conflict with Indian rights preserved by Section 1162(b). The Court noted that Public Law 280 (18 U.S.C. § 1162) preserved prior treaty rights, and legislation pertaining to the Menominee Tribe did not abrogate those rights.

Another case in this District also recognized this principle, although the ultimate result was adverse to the Indians. Rincon Band of Mission Indians v. County of San Diego, 324 F.Supp. 371 (S.D.Calif.1971), questioned whether the defendant could enforce its municipal anti-gambling ordinances on the Rincon Reservation in San Diego County. The Court ruled that the County could, first because the municipal ordinances qualified as "criminal laws of the state" under Section 1162(a), and second, because the anti-gambling statutes did not fall within one of the three areas of exception provided by Section 1162(b). "For a state law to be unenforceable due to conflict, there must exist a conflict between it and a treaty, agreement, statute or a regulation made under the authority of one of these three types of laws." 324 F.Supp. at 378.

In the case now before the Court, the defendants have cited and relied on two Supreme Court cases which are clearly distinguishable. Metlakatla Indian Community, Annette Islands Reserve v. Egan, 369 U.S. 45, 82 S.Ct. 552, 7 L.Ed. 2d 562 (1962), and the companion case of Organized Village of Kake v. Egan, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962), both dealt with Alaskan Indian tribes. The Supreme Court recognized that state laws which conflict with valid federal laws or Indian laws validly adopted pursuant to federal statutes, treaties, or agreements are unenforceable. In these two cases, however, the Court found that the Indians had acted pursuant to regulations promulgated by the Secretary of the Interior, who did not have the authority to adopt the regulations upon which the Indians relied. Therefore, the state laws prevailed. That holding clearly distinguishes those cases from the one now before the Court. The underlying factual situation there dealt with the peculiarities surrounding Alaska's admission to the Union, and the legislation designed to effect a smooth transition from federal to state control. The Alaska Statehood Act is quite different from any other Indian legislation relevant here.

■ According to these cases, then, if the Indians can show that some federal treaty, agreement, or statute authorizes them to adopt rules and regulations governing the "control, licensing, or regulation" of hunting, trapping, and fishing, then those Indian laws are valid, and take precedence over conflicting state laws.

Plaintiff Quechan Tribe, has the right to control, regulate and license hunting and fishing on the Fort Yuma Indian Reservation. This right is confirmed in federal statutes, particularly by the Indian Reorganization Act of 1934, 25 U. S.C. § 461 et seq. and 18 U.S.C. § 1165. This latter statute makes it a crime for any person to enter an Indian Reservation for the purpose of hunting, fishing, or trapping unless such person has tribal permission to do so.

The Executive Order of January 9, 1884, issued by President Chester A. Arthur, established the Fort Yuma Indian Reservation "to be used for Indian purposes. . . ." "Indian purposes" necessarily include the right to hunt, trap, and fish on the reservation. United States v. Sturges, 27 Fed.Cas. 1357, Case No. 16,414 (D.Nev.1879). Pursuant to these statutes and agreements, the Indians did adopt a constitution and by-laws, which included a system of control for hunting and fishing. Since the Indians have been given federal rights, and since they have acted pursuant to those rights, they supersede any state laws which conflict therewith.

█ Accordingly, having considered all of the arguments of both parties, the Court concludes that the Plaintiff has stated a cause of action upon which relief can be granted. The issues presented must be resolved against the defendants. The actions of Warden Buker on September 3, 1971 were proper and lawful activities within the scope of his duties as a federal and tribal officer.

█ Defendants, Rowe, Moore, Escalanti and Palomino, their employees, agents, successors, and subordinates are without lawful authority to detain, arrest, take into custody, make threats under color of authority, or otherwise interfere in any manner whatsoever with identified Tribal Game Wardens or with Deputy Special Officers of the Department of the Interior enforcing federal laws and regulations and ordinances of Plaintiff Tribe regulating hunting, trapping, and fishing within the boundaries of the Fort Yuma Indian Reservation.

Defendants, their employees, agents, successors and subordinates are permanently enjoined from detaining, arresting, taking into custody, making threats under color of authority, or otherwise interfering with identified Tribal Game Wardens or with Deputy Special Officers of the Department of the Interior acting in discharge of their duties to enforce federal laws and regulations and ordinances of Plaintiff Tribe regulating hunting, trapping and fishing within the boundaries of the Ft. Yuma Indian Reservation.

It is so ordered.