**UNITED STATES of America, Plaintiff,**

v.

**John Terrence BIG EAGLE, Defendant.**

**No. CR 87–30060–01.**

United States District Court,
D. South Dakota, C.D.

May 6, 1988.

David L. Zuercher, Asst. U.S. Atty., Pierre, S.D., for plaintiff.

Robert C. Riter, Jr., Riter, Mayer, Hofer & Riter, Pierre, S.D., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

On November 23, 1987, defendant, John Terrence Big Eagle, filed a motion to dismiss the indictment in this action on the grounds that this Court lacks subject matter jurisdiction. The indictment charges the defendant with violating the Lacey Act prohibitions against transporting, selling, or acquiring fish taken or possessed in violation of state law or Indian tribal law. *See* 16 U.S.C. §§ 3371 *et seq.* (1982). Section 3372(a)(1) provides:

> It is unlawful for any person—
>
> (1) to import, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken or possessed in violation of any law, treaty, or regulation of the United States or in violation of any Indian tribal law.

16 U.S.C. § 3372(a)(1) (1982).

The indictment states the following allegations: "John Terrence Big Eagle ... did knowingly engage in conduct that involved the intent to sell fish with a market value in excess of $350.00, by knowingly acquiring and transporting said fish, knowing that said fish were taken and possessed in violation of and in a manner unlawful under the laws and regulations of the Lower

Brule Sioux Tribe, specifically Section 32 of the Lower Brule Wildlife Management Code, Ordinance No. LB–82–C, in that the fish were caught with a net without a commercial fishing license issued by the Lower Brule Sioux Tribe...." [1] The defendant is an enrolled member of the Crow Creek Sioux Tribe. The offense was committed allegedly on the reservation of the Lower Brule Sioux Tribe near the Big Bend Dam. The Crow Creek Reservation and the Lower Brule Reservation are divided geographically by the Missouri River. The Missouri River establishes the eastern boundary of the Lower Brule Reservation and the western boundary of the Crow Creek Reservation.

■ The defendant asserts that this Court lacks subject matter jurisdiction for several reasons. First, the defendant argues that the government cannot establish that the alleged offense occurred on the reservation of the Lower Brule Sioux Tribe as a matter of law. The defendant cites *United States v. Wounded Knee* for the proposition that the legislative taking for the Fort Randall Dam and Reservoir project diminished the Lower Brule Reservation. 596 F.2d 790, 795 (8th Cir.1979), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289. The defendant then argues in vague terms that the Lower Brule Sioux Tribe has no jurisdiction to regulate fishing "on that part of the river involved in the Fort Randall taking."

The defendant's assertion that the Fort Randall taking diminished the Lower Brule Reservation is erroneous. While the United States Court of Appeals for the Eighth Circuit recognized that the Fort Randall taking *may* have diminished the Crow Creek Sioux Reservation in *Wounded*

*Knee, id.,* the Eighth Circuit later held that the Lower Brule Reservation was not disestablished by the Fort Randall Act. *See Lower Brule Sioux Tribe v. South Dakota,* 711 F.2d 809, 821 (8th Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984). In addition, the Eighth Circuit decided that the fishing rights of the Lower Brule Sioux Tribe were not abrogated by the Fort Randall Act. *Id.* at 824. Thus, there is no basis for the defendant's vague assertion that the Fort Randall taking somehow diminished the authority of the Lower Brule Tribe to regulate fishing on the Lower Brule Reservation.[2] Moreover, the "part of the river involved in the Fort Randall taking" is not near the Big Bend Dam, where the offense allegedly occurred. As the defendant acknowledges that the Tribe has jurisdiction over the portion of the river involved in the legislative taking for the construction of the Big Bend Dam, the defendant's motion to dismiss the indictment on the grounds that the government cannot prove that the offense occurred on the Lower Brule Reservation must be dismissed. Assuming that the government can show that the defendant was fishing illegally on the western shore of the Missouri River near the Big Bend Dam, the government will have proven that the offense occurred on the Lower Brule Reservation.

■ The defendant also argues that the government cannot show that the alleged offense occurred on the Lower Brule Reservation because "there are no defined boundaries in the Missouri River dividing the Lower Brule Sioux Tribe Reservation and the Crow Creek Tribe Reservation." This assertion is also erroneous. The terms of the Great Sioux Agreement of

---

1. Section 32 of the Wildlife Management Code of the Lower Brule Sioux Tribe provides:

    All species of fish may be taken throughout the year. There are no limits on the number of fish taken except for paddlefish. The limit for paddlefish is one (1) per day. Any paddlefish snagged must be retained and counted as the daily limit and snagging for fish must be discontinued after the paddlefish limit is reached. Fish may not be sold or caught with a net without a commercial fishing license issued by the Lower Brule Sioux Tribe.

2. The defendant's reliance on *Oregon Wildlife Dep't v. Klamath Tribe,* 473 U.S. 753, 105 S.Ct. 3420, 87 L.Ed.2d 542 (1985), and *United States v. Dion,* 476 U.S. 734, 106 S.Ct. 2216, 90 L.Ed.2d 767 (1986), for the contention that "under certain circumstances tribal lands and rights are diminished or extinguished" does not further the defendant's position or raise any issue for the Court to decide.

1889 establish the boundaries of the Lower Brule Reservation. Section five of the 1889 Agreement establishes the eastern boundary of the Lower Brule Reservation at " 'the center of the main channel of the Missouri River' extending from 'Old Fort George' south to 'Fort Lookout.' " [3] *Lower Brule Sioux Tribe,* 711 F.2d at 813 (citing *United States v. Sioux Nation of Indians,* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980)). Thus, the Court cannot find as a matter of law that the government cannot prove that the alleged offense occurred within the boundaries of the Lower Brule Sioux Tribe.

■ The defendant next contends that the Court lacks subject matter jurisdiction to hear this action because the Lacey Act does not apply to Indians. The only United States Court of Appeals to decide this issue has held that the Lacey Act does apply to Indians. *See United States v. Sohappy,* 770 F.2d 816, 819 (9th Cir.1985), *cert. denied,* 477 U.S. 906, 106 S.Ct. 3278, 91 L.Ed.2d 568 (1986). This Court is persuaded that the decision of the Ninth Circuit in *United States v. Sohappy* is correct and that the discussion of the issues raised in *Sohappy* is dispositive for purposes of deciding this motion. *See id.* at 818–822. The federal government can regulate fishing concurrently with the Indian tribes in the interest of conservation. *Id.* at 819. The regulation of fishing is not a purely internal matter for exclusive tribal regulation. *Id.* at 819 n. 3. In reaching this result, the Ninth Circuit decided that the doctrine that a tribe has exclusive jurisdiction over offenses by one Indian against another, first advanced in *Ex parte Crow Dog,* 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883), is not applicable. Thus, the defendant's reliance on *Crow Dog* is misplaced.

■ The defendant also argues that the Tribe does not have jurisdiction to regulate fishing rights because the Tribe has entered into an agreement with the State of South Dakota to cooperate in "wildlife management and public outdoor recreation." This argument is not well taken. The agreement between the Tribe and the State contains the following provision: "The State and the Tribe, *without conceding their respective mutual positions regarding jurisdiction,* desire to cooperate for their mutual benefit.... (emphasis added)" The assertion that the Tribe implicitly waived its jurisdiction to regulate fishing by entering into this agreement is without merit.

Finally, the defendant asserts that he has a right to fish in the Missouri River based solely on his status as an Indian, even assuming that the Lacey Act is applicable to Indians. For this proposition, the defendant points to the treaty rights of the Sioux Indians. The Court need not decide whether the defendant's fishing rights have been abrogated by federal law. The narrow issue for determination is whether the Lower Brule Sioux Tribe may regulate fishing on its reservation and whether these regulations apply to Indians enrolled in other tribes.

The Fort Laramie Treaty of 1868 set aside certain territory for the "absolute and undisturbed use and occupation" of certain bands of the Sioux Nation of Indians. *See* 15 Stats. 635 (1868). The Treaty may be construed to authorize regulation of fishing and hunting by the Indian tribes.

**3.** The Great Sioux Agreement of 1889 creates the Lower Brule Reservation and sets it boundaries. Section 5 provides:

That the following tract of land, being a part of the said Great Reservation of the Sioux Nation, in the Territory of Dakota, is hereby set apart for a permanent reservation for the Indians receiving rations and annuities at the Lower Brule agency, in said Territory of Dakota, namely: Beginning on the Missouri River at Old Fort George; thence running due west to the western boundary of Presho County; thence running south on said western boundary to the forty-fourth degree of latitude; thence on said forty-fourth degree of latitude to western boundary of township number seventy-two; thence south on said township western line to an intersecting line running due west from Fort Lookout; thence eastwardly on said line to the center of the main channel of the Missouri River at Fort Lookout; thence north in the center of the main channel of the said river to the original starting point.

Great Sioux Agreement of 1889, ch. 405, sec. 5, 25 Stat. 888 (1889).

*See Montana v. United States*, 450 U.S. 544, 559–560, 101 S.Ct. 1245, 1255–56, 67 L.Ed.2d 493 (1981). Thus, prior to 1889, the Sioux tribes may have had the power to regulate fishing within their reservation. In 1889, the Sioux Indians entered into an agreement with the United States to divide the Great Sioux Reservation into numerous reservations. *See* Great Sioux Agreement of 1889, ch. 405, 25 Stat. 888 (1889); *see also Lower Brule Sioux Tribe*, 711 F.2d at 813. The 1889 Agreement does not mention the subject of fishing or the right to regulate fishing. The Agreement, however, contains a provision for the continuation of the provisions of the 1868 Treaty that are not in conflict with the 1889 Agreement. *See* Great Sioux Agreement of 1889, ch. 405, sec. 19, 25 Stat. 888 (1889). Reading the two treaties together, the 1889 Agreement may be construed to authorize regulation of fishing by the Indians within each reservation. Presently, the Sioux reservations have their own fishing regulations.[4]

As a general rule, Indian tribes have "the power to manage the use of their territory and resources by both members and nonmembers." *See New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 335, 103 S.Ct. 2378, 2387, 76 L.Ed.2d 611 (1983). This authority includes the power to regulate fishing by nonmembers of the tribe on tribal land. *See Montana v. United States*, 450 U.S. 544, 558, 101 S.Ct. 1245, 1254, 67 L.Ed.2d 493 (1981); *see generally*, F. Cohen, *Handbook of Federal Indian Law*, ch. 8 at 465 (1982 ed.). While no court has decided whether tribal regulation of fishing applies to nontribal Indians, the United States Court of Appeals for the Ninth Circuit has decided that a tribe with authority to regulate fishing has the right:

> to determine who may enter the reservation; to define the conditions upon which they may enter; to prescribe rules of conduct; to expel those who enter the reservation without proper authority or those who violate tribal, state or federal laws; to refer those who violate state or federal laws to state or federal officials; and to designate officials responsible for effectuating the foregoing.

*Quechan Tribe of Indians v. Rowe*, 531 F.2d 408, 411 (9th Cir.1976). In exercising these rights, Indian tribes implicitly have the authority to permit nontribal Indians to enter their reservations to fish in the manner prescribed by the tribe. At least one state court has held that a nontribal Indian may be prosecuted for netting fish on a reservation in violation of state law provided that the tribe has not given the nontribal Indian permission to fish on the reservation. *See Donahue v. California Justice Court for Klamath Trinity Judicial District*, 15 Cal.App.3d 557, 93 Cal.Rptr. 310, 313–15 (1971), *cert. denied*, 404 U.S. 990, 92 S.Ct. 530, 30 L.Ed.2d 541. Thus, the rule that emerges from dicta in the case law on tribal authority to regulate fishing by nonmembers and by nontribal Indians is that the tribe itself has the authority to regulate fishing and, implicitly, to decide whether these regulations apply to nontribal Indians.

The Lower Brule Sioux Tribe's Wildlife Management Code is applicable, through section two of the Code of Tribal Offenses, to "[a]ll Indians" except "[p]ersons of Indian descent who are not mem-

---

4. The Lower Brule Sioux Tribal Law and Order Code contains the following provision on the Tribe's jurisdiction to regulate fishing on the Reservation:

> The provisions contained herein specifically address all lands within the exterior boundaries within the original boundaries of the Lower Brule Sioux Indian known as the Lower Brule Sioux Indian Reservation, and all matters contained herein relating to the propagation, conservation, management, distribution, transportation, storage and taking of fish and game, relating to the management, conservation and control of Reservation lands, forests, waters for fish and game purposes and relating to fishing, hunting, trapping, timbering, selling, bartering, and exchanging of fish, game, timber, and timber products from the local resources on the Lower Brule Sioux Indian Reservation and relating to the use of boats, snowmobiles, and other off-the-road recreation vehicles on the Lower Brule Sioux Indian Reservation as well as other outdoor recreational activities are all subject to the jurisdiction of the Lower Brule Sioux Tribe.

Lower Brule Sioux Tribe Law and Order Code, ch. XV, sec. 2.

bers of a recognized Tribe under Federal jurisdiction at the time the offense was committed." *See* Lower Brule Sioux Tribe Law and Order Code, ch. XV, sec. 9; Lower Brule Sioux Tribe Law and Order Code, ch. XI, sec. 2. In this case, the defendant has not argued that he was granted permission by the Lower Brule Sioux Tribe to fish, in any manner, on the Lower Brule Reservation. Thus, the Court holds that the fishing regulations of the Lower Brule Sioux Tribe are applicable to the defendant. Neither the Lacey Act nor the Lower Brule Wildlife Management Code "takes away the rights of Indians to fish in the Missouri River," as the defendant argues. Rather, Indians retain the right to fish in accordance with tribal regulations except as these rights may be expressly abrogated by federal law. The defendant as an enrolled member of the Crow Creek Sioux Tribe has no right to fish in any manner he pleases on the Lower Brule Sioux Reservation.

As the defendant's motion to dismiss the indictment for lack of subject matter jurisdiction is without merit, the defendant's motion to dismiss is denied.