**UNITED STATES of America, Appellee,**

v.

**John Terrence BIG EAGLE, Appellant.**

No. 88–5272.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1989.

Decided Aug. 2, 1989.

Rehearing and Rehearing En Banc
Denied Sept. 8, 1989.

Robert C. Riter, Jr., Pierre, S.D., for appellant.

Edward J. Shawaker, Washington, D.C., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HEANEY, Senior Circuit Judge.

John Terrence Big Eagle, a member of the Crow Creek Indian Tribe, was charged in federal court with violations of the Lacey Act, 16 U.S.C. §§ 3372(a)(1) and 3373(d)(1)(B), which prohibit fishing in violation of a tribal law. The Crow Creek

Reservation is located on the eastern banks of the Missouri River in South Dakota. The Lower Brule Reservation lies on the other side of the Missouri River, stretching to the mid-point of the channel. In 1987, Big Eagle engaged in a commercial fishing operation on the Missouri River, using a net, and admittedly stretched the net past the mid-point of the river and within twenty feet of the western banks occupied by the Lower Brule Reservation (Reservation) without a permit. Big Eagle was indicted under the Lacey Act. He moved to dismiss the indictment for lack of jurisdiction. The district court denied his motion, 684 F.Supp. 241, and he entered into a conditional plea reserving the issue of jurisdiction for our consideration. We affirm the decision of the district court and hold that the federal government had jurisdiction under the Lacey Act to prosecute Big Eagle.

### DISCUSSION

■■■ Big Eagle raises several issues on appeal, focusing on the scope of the Lacey Act and questioning whether the Lower Brule Tribe's regulatory jurisdiction stretches to the mid-point of the channel.[1] Big Eagle admits that he did not possess a tribal or state license to use a net on the Missouri River, even though both entities require a license for net fishing.

### I. THE LACEY ACT

The Lacey Act makes it unlawful for any person to acquire or sell any fish or wildlife taken in violation of United States law or in violation of any Indian tribal law. 16 U.S.C. § 3372(a)(1). In turn, Indian tribal law is defined to mean "any regulation of, or other rule of conduct enforceable by, any Indian tribe, band, or group but only to the extent that the regulation or rule applies within Indian country as defined in

section 1151 of Title 18." 16 U.S.C. § 3371(c).

Big Eagle argues that, because the Lower Brule Tribe could not enforce its fishing regulations against him, he did not violate any Indian tribal law within the meaning of the Lacey Act. We disagree. Subsumed within Big Eagle's position are two separate arguments: first, that the Lower Brule Tribe does not have jurisdiction over fishing by non-members on the Missouri River, and second, that even if the Lower Brule Tribe had regulatory jurisdiction, it cannot enforce its regulations against him because Big Eagle is not a member of that tribe. *See Greywater v. Joshua*, 846 F.2d 486 (8th Cir.1988) (tribal courts do not have jurisdiction to bring criminal charges against non-members of the tribe).

We do not believe that the power of the federal government is so limited. The Lacey Act was amended in 1981 to provide comprehensive enforcement of wildlife laws.

> Enforcement of these laws is important both to ensure that endangered species are not further threatened with extinction, and to afford management of healthy wildlife populations for hunting and other recreational purposes * * * S. 736 would not constitute a broadening of federal authority under the Act, but merely would allow the federal government to provide more adequate support for the full range of state, foreign, and federal laws that protect wildlife.

S.Rep. No. 97–123, 97th Cong., 1st Sess., at 2–4 (1981) (accompanying 95 Stat. 1073), *reprinted in*, U.S.Cong. & Admin.News vol. 3 at 1748, 1749–1751 (1981). This report makes clear that Congress' purpose in amending the Lacey Act was to provide comprehensive enforcement of wildlife laws and regulations established by state and lo-

---

1. Big Eagle also argues that, as an Indian, he had a reserved right to take fish from the Missouri River, that the Lacey Act does not apply to Indian people and that the Fort Randall taking has changed the boundary line of the Reservation. We do not believe that Indians who are not members of the Lower Brule Tribe possess a special right to violate the Lower Brule Tribe's fishing laws. Moreover, the Lacey Act, by its terms and definitions, applies to Indian people.

*See* 16 U.S.C. § 3371(e) (person refers to any individual who is a member of an entity subject to the jurisdiction of the United States); *United States v. Sohappy*, 770 F.2d 816, 820–22 (9th Cir.1985) (same). We have previously held that the Fort Randall taking and other acts of Congress have not diminished the boundaries of the Reservation. *Lower Brule Sioux Tribe v. State of South Dakota*, 711 F.2d 809 (8th Cir.1983).

cal entities. To that end, Congress sought to enforce substantive Indian wildlife laws within the full extent of Indian territory.

Section 2(c) defines the term "Indian tribal law" to mean any regulation of any Indian tribe, but only to the extent that the regulation or rule applies within Indian country as defined in Section 1151 of Title 18, United States Code. This definition provides that Indian tribal laws are subsumed within the coverage of the Lacey Act only to the extent that they cover laws or regulations within Indian reservations or other Indian lands included within the definition of Indian country.

*Id.* at 5, U.S.Code Cong. & Admin.News at 1752 (1981).

Thus, the crucial inquiry is whether the acts complained of took place within the Reservation and not, as Big Eagle insists, whether the Lower Brule Tribe itself has the power to prosecute. As section 3371 indicates, the Lacey Act applies within Indian country, defined as "all land within the limits of any Indian reservation under the jurisdiction of the United States Government notwithstanding the issuance of any patent, and, including rights of way running through the reservation * * *." 18 U.S.C. § 1151. Whether the Indian tribe maintains complete jurisdiction to enforce or not—so long as the land is within the Reservation—it is also within the jurisdiction of the United States Government. Under this construction of the Lacey Act, only two issues remain: first, whether Big Eagle violated Indian law, and second, if so, did he do so within the boundaries of the Reservation.

## II. THE LOWER BRULF RESERVATION AND TRIBAL LAW

A. The Reservation.

■ In *Lower Brule Sioux Tribe v. State of South Dakota, supra* note 1, we held that the boundary of the Reservation lies at the mid-point of the Missouri River. In *Lower Brule,* the State of South Dakota argued that they had the exclusive right to control hunting and fishing along portions of the Missouri River within the Reservation, and that this right extended to control of hunting and fishing by members of the Lower Brule Tribe. The district court held that the State had this authority on the theory that three previous acts of Congress had changed the boundaries of the Reservation to exclude that part of the riverbed that lies west and south of the mid-point of the river. This Court reversed, holding that no such "abrogation" or "disestablishment" of the Reservation had taken place. We held that the boundary of the Reservation continued to be the mid-point of the Missouri River and that members of the Lower Brule Tribe had a continuing right to hunt and fish on the river free of state regulation, subject only to regulation by Congress. We remanded the matter to permit the district court to determine who possessed jurisdiction to regulate hunting and fishing by non-members of the Lower Brule Tribe. 711 F.2d at 827. Thus, Big Eagle was fishing within the boundaries of the Reservation.

B. Tribal Law.

■ On remand, the State and the Lower Brule Tribe entered into a settlement agreement. Without conceding their respective positions regarding jurisdiction, the Lower Brule Tribe and the State divided administrative responsibility for the regulation of hunting and fishing. Section 2 of the agreement provided:

The parties agree that the state will manage the fisheries in the Missouri River on and adjoining the reservation. Non-members of the Tribe must purchase the required state fishing licenses to fish in the Missouri River without the requirement to purchase the tribal permit. Tribal members may fish in these waters with only the tribal permits, but must abide by the seasons, bag limits and methods established for non-members.

Appellant's Appendix, Exhibit 3.

This settlement agreement constitutes part of the Lower Brule Tribe's law and regulations. Because both tribal and state law require a permit for net fishing, Big

542

Eagle should have known that a license was required. *See* Lower Brule Wildlife Code, § 32; S.D.Codified Laws Ann. § 41-6-38 (1985 revision).

CONCLUSION

■ We hold that Big Eagle violated tribal law by failing to obtain either a state or tribal permit as required by the settlement agreement.[2] Accordingly, we affirm the decision of the district court.

2. Thus, we do not find it necessary to decide the questions left open in *Lower Brule.* It would be inappropriate to do so in a case where the State of South Dakota is not a party, and where the necessary historical and administrative evidence has not been submitted. *See New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983); *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981).