No. 548. SNOHOMISH COUNTY *v.* SEATTLE DISPOSAL Co. ET AL. Sup. Ct. Wash. Certiorari denied. *John Wilson* for petitioner. *Orville H. Mills* for respondents. *Solicitor General Griswold* filed a memorandum for the United States, by invitation of the Court, *ante,* p. 925.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE WHITE concurs, dissenting.

The Supreme Court of Washington held in a 6–3 decision that the State lacks power to apply a local zoning ordinance for control of garbage dumps and sewage landfills to respondent Seattle Disposal Company, a non-Indian lessee of two parcels of land within the Tulalip Tribes Reservation.

One section of the Act relevant to our problem—now codified as 28 U. S. C. § 1360—gave civil jurisdiction over Indians and Indian lands to California, Minnesota, Nebraska, Oregon, and Wisconsin [1] with the following proviso:

> "Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property . . . belonging to any Indian or any Indian tribe . . . that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute . . . ."

The federal question arises in the following manner. By Public Law 280, c. 505, § 7, 67 Stat. 590, Congress

---

[1] These five States—and Alaska by later amendment—are the only States specifically given jurisdiction without the need for state legislation. Washington obtained jurisdiction by way of the "any other State" clause in § 7 of the Act, quoted in part in text below, which was not codified.

gave consent "to any other State not having jurisdiction with respect to criminal offenses or civil causes of action [involving Indians and Indian lands], or with respect to both, *as provided for in this Act,*[2] to assume jurisdiction . . . by affirmative legislative action . . . ." (Italics added.)

Pursuant to Public Law 280, the State of Washington undertook to assume jurisdiction over Indians and their lands upon their consent. In the state enactment, jurisdiction was limited by Wash. Rev. Code § 37.12.060, which incorporated verbatim the restrictions quoted above that are found in 28 U. S. C. § 1360.

In the case before us the Washington Supreme Court held that the Tulalip Tribes' lands in issue were either held in trust or subject to a restraint against alienation imposed by 25 U. S. C. §§ 403a and 403a-2, which limit the length of leases made by the Tulalip Tribes and require approval of the Secretary of the Interior of leasing practices.[3] The majority then held that under both 28 U. S. C. § 1360 and the state statute incorporating language from § 1360, zoning regulations were "encumbrances" on Indian lands because they limit the use thereof. One Washington state court decision, our decision in *Squire* v. *Capoeman,* 351 U. S. 1, and opinions of the Department of Interior were relied on by the majority in formulating this definition of "encumbrance."

[2] The italicized language is a reference to the proviso in § 1360, quoted in this opinion.

[3] One of the arguments petitioner makes is that that parcel of Indian land not held in trust by the Government was not, as held below, subject to restraint against alienation. I have found little merit in this contention, since the Tulalip Tribes purchased the parcel in question after 1956, with the effect that 25 U. S. C. § 403a-2 is controlling and indirectly restricts the power to make leases.

The majority also held that since 25 U. S. C. §§ 403a, 403b, and 415 authorized the Tulalip Tribes to make leases, their non-Indian lessees were entitled to the benefit of the restriction on state jurisdiction. Otherwise, reasoned the majority, the State would be interfering with the Indians' right to make leases, and the State could not accomplish indirectly—by subjecting respondent Disposal Company to zoning regulations—what it was prohibited from doing by acting directly on the Indians. For this proposition one South Dakota decision and our decision in *United States* v. *Allegheny County*, 322 U. S. 174, were relied on.

The dissent was of the view that a zoning regulation directed at protecting public health and welfare was not an "encumbrance" as that term is used in § 1360 and the state equivalent. In that view, Indian activities which directly injure the citizenry of the State at large, or reasonably appear to do so, should be subjected to state control. Otherwise, state programs to check stagnation of water supply and pollution of the air would be frustrated. The dissent thought that the term "encumbrance" in § 1360 should be construed in conjunction with 25 U. S. C. § 231, which provides, *inter alia*, that the Secretary of the Interior permit state agents to enter on Indian lands to enforce sanitation and quarantine regulations. Finally, said the dissent, the non-Indian lessee could not rely on any immunity from state regulations which the Indians themselves might enjoy. *Oklahoma Tax Comm'n* v. *Texas Co.*, 336 U. S. 342, where a non-Indian lessee of mineral rights on Indian lands was held not immune from state taxation of gross production, was cited.

A substantial federal question is presented. It is apparent from a reading of the opinion of the Washington Supreme Court that the State has assumed juris-

diction over Indians as extensive as permitted by Public Law 280. There is nothing to suggest that when the State copied the limitation on state jurisdiction found in § 1360 into the state statute, the State intended to impose greater restrictions than § 1360 imposes. The questions presented, then, are whether zoning controls over burning or dumping of garbage constitute an "encumbrance" on Indian lands under § 1360 and whether a non-Indian lessee can enjoy any immunity from state zoning that the Indians enjoy.

Subjecting respondent lessee to state regulations on garbage and sewage disposal seems no more a burden or encumbrance on the Indians' right to lease their lands than the state tax on oil production of the non-Indian lessee in *Oklahoma Tax Comm'n* was a burden or encumbrance on the rights of the Indians there involved to make oil leases. In *Oklahoma Tax Comm'n* we said: "These cases present no question concerning the immunity of the Indian lands themselves from state taxation. There is no possibility that ultimate liability for the taxes may fall upon the owner of the land." 336 U. S., at 353. The same proposition, in a different context, may be true here, since all petitioner demands is that respondent Disposal Company obtain a refuse disposal use permit before commencing operations.

There may also be merit to the dissent's view that the immunity of Indian lands to a state "encumbrance" cannot frustrate state programs to check air and water pollution. The States should, perhaps, be able to prevent sewage dumped on Indians' lands from draining into streams which flow into water supplies outside Indian lands. The same is true of smoke from garbage burned on Indian lands that contributes to smog over nearby cities. State controls in this area may be permissible by virtue of 25 U. S. C. § 231, whether or not

they are achieved under the label "zoning" rather than "sanitation regulations."

The Solicitor General, in a memorandum expressing the views of the United States, asserts that the decision below was correct because it accorded with an administrative regulation of the Department of the Interior. This regulation [4] provides that no local zoning ordinance shall be applicable to land leased from an Indian tribe where, as here, the land is held in trust by or is subjected to a restriction against alienation by the United States. The Supreme Court of Washington did not rely on this regulation,[5] and whether it is valid or unduly restricts the state authority conferred by Public Law 280 and 25 U. S. C. § 231 is an important federal question this Court should decide. I would grant certiorari.

---

[4] 25 CFR § 1.4 provides:

"(a) Except as provided in paragraph (b) of this section, none of the laws, ordinances, codes, resolutions, rules or other regulations of any State or political subdivision thereof limiting, zoning or otherwise governing, regulating, or controlling the use or development of any real or personal property, including water rights, shall be applicable to any such property leased from or held or used under agreement with and belonging to any Indian or Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States.

"(b) The Secretary of the Interior or his authorized representative may in specific cases or in specific geographic areas adopt or make applicable to Indian lands all or any part of such laws, ordinances, codes, resolutions, rules or other regulations referred to in paragraph (a) of this section as he shall determine to be in the best interest of the Indian owner or owners in achieving the highest and best use of such property. . . ."

[5] The court below did rely on a 1942 decision of the Department of the Interior, 58 I. D. 52, holding that a Minnesota county could not apply a nonresidential zoning ordinance to certain Indian lands. But this decision was rendered before Public Law 280 was enacted.