**RINCON BAND OF MISSION INDIANS**

v.

**COUNTY OF SAN DIEGO, and J. C.
O'Connor, Sheriff for the County
of San Diego.**

Civ. No. 70-360-T.

United States District Court,
S. D. California.

March 17, 1971.

George Forman, Daniel M. Rosenfelt, Robert S. Pelcyger, Richard W. Power, California Indian Legal Services, Escondido, Cal., for plaintiff.

Robert G. Berrey, County Counsel, San Diego County by Anthony Albers, Deputy County Counsel, San Diego, Cal., for defendants.

## MEMORANDUM OF DECISION

TURRENTINE, District Judge.

Plaintiff, Rincon Band of Mission Indians, seeks declaratory and injunctive relief from enforcement of a county

gambling ordinance on an Indian reservation. The action is now before the court on cross motions for summary judgment. The court has determined from the affidavits, memoranda and argument of counsel that there is no genuine issue of material fact. This memorandum of decision incorporates findings of fact and conclusions of law.

Plaintiff is an Indian Band with a governing body duly recognized by the Secretary of the Interior, and said Band is a governing body of the Rincon Indian Reservation. The Reservation, containing approximately 3500 acres, is located within the unincorporated area of the County of San Diego, California. These lands are held in trust by the United States for the benefit of plaintiff.

On October 1, 1970, plaintiff adopted a tribal ordinance authorizing the establishment of a card room on the Rincon Indian Reservation where certain card games not proscribed by the state statute on gambling would be played. Cal. Pen.Code. § 330. Revenues derived from this operation would accrue to the Rincon Band. These plans were suspended when the Sheriff of San Diego County, in response to plaintiff's inquiry, declared that such an enterprise would be in violation of a county criminal ordinance entitled Card Rooms and Gambling, San Diego County Code, Division 7, Chapter 1, Title 3, §§ 37.101 through 37.105 inclusive. This ordinance prohibits, *inter alia*, the letting or use of property for gambling purposes, and betting on card games such as draw poker. In his letter to plaintiff, the Sheriff expressed a fear that the Rincon Indian Reservation might become a "little Las Vegas." This ordinance is presently in full force and effect throughout the unincorporated areas of the county. Plaintiff does not allege that the ordinance is not being enforced equally among all inhabitants of the county.

Any jurisdiction of San Diego County to apply its gambling ordinance to Indian trust lands derives from a federal statute, Public Law 280, 67 Stat. 588, codified as two federal statutes, 18 U.S. C. § 1162 and 28 U.S.C. § 1360. 18 U.S.C. § 1162 grants to certain states, including California, full criminal jurisdiction over Indian lands within these states. 28 U.S.C. § 1360 embodies a corresponding grant to the states of civil jurisdiction over Indian lands. Each statute qualifies the grant by excluding certain types of state laws.

The initial issue is whether the San Diego County ordinance qualifies as a criminal law of the State of California within the meaning of 18 U.S.C. § 1162; if it is a criminal law of the state, then it will apply to plaintiff unless it falls within one of the classes of legislation excepted from the federal grant of jurisdiction. This question has received little discussion in the case law. In a recent federal decision, it was held that a "rock festival" ordinance of Riverside County was a law of the state of California and that its provisions applied to Indian lands by virtue of the jurisdictional grant contained in Public Law 280. Madrigal v. County of Riverside, Civil No. 70–1893, C.D.Cal., Findings of Fact and Conclusions of Law dated February 16, 1971. The court relied in part on a Washington decision, Snohomish County v. Seattle Disposal Company, 70 Wash.2d 668, 425 P.2d 22 (1967), cert. denied 389 U.S. 1016, 88 S.Ct. 585, 19 L.Ed.2d 662. The case there involved application of a county zoning ordinance to a garbage dump operated by a non-Indian lessee of Indian trust lands. The provisions of Public Law 280 apply in the state of Washington. It was held that the ordinance could not be applied to the garbage dump because the ordinance was an encumbrance on the Indian trust lands. Public Law 280 provides that state laws may not be applied to Indian trust lands if they constitute encumbrances on the lands. 18 U.S.C. § 1162; 28 U.S.C. § 1360. There was no discussion of whether the ordinance there qualified as a law of the state, but implicit in the result is the assumption that the ordinance is a law of the state; if it were not a state law within the

meaning of Public Law 280, it would have no application to Indian lands, and the necessity for discussing whether it fell within the category of state laws imposing encumbrances would not have arisen.

Justices Douglas and White dissented from the Supreme Court order denying certiorari on the ground that important federal questions were presented: whether the ordinance constituted an "encumbrance" as that word is used in Public Law 280; whether a non-Indian lessee was entitled to any immunity that the Indian owner might possess; and whether an administrative regulation of the Secretary of the Interior unduly restricted the state's authority under Public Law 280 and 25 U.S.C. § 231.[1] 389 U.S. 1016, 1019, 1020, 88 S.Ct. 585, 19 L.Ed.2d 662. However, as in the state decision, this discussion is predicated on the ordinance being a law of the state.

■ It appears that the purpose of Congress in passing Public Law 280 was to permit the Indians to become full and equal citizens of their respective states and to terminate the wardship of the federal government over their affairs. The House committee report on this legislation, which was incorporated in the Senate report, notes that:

> This legislation, whether before the House or presently under committee consideration, has two coordinate aims: First, withdrawal of Federal responsibility for Indian affairs wherever practicable; and second, termination of the subjection of Indians to Federal laws applicable to Indians as such. H.R.Rep.No. 848, 83d Cong., 1st Sess. (1953) 2 U.S.Code, Cong. & Admin.News, p. 2409 (1953).

In the years preceding passage of the legislation, studies were made by the Department of the Interior to determine whether the states were able and willing to assume responsibilities for the administration of civil and criminal justice for their Indian populations. A letter from Mr. Orme Lewis, Assistant Secretary of the Interior, to the Honorable A. L. Miller, Chairman of the Committee on Interior and Insular Affairs, published in the House report, stated:

> The Bureau of Indian Affairs of this Department has consulted with State and local authorities and with the Indian groups on the question of transfer of civil and criminal jurisdiction on the States in the following States: California * * *.

> In each of the States mentioned, with the exception of Nevada, State and local authorities indicated their agreeableness to the proposed transfer of jurisdiction. *Id.* at p. 2413

■ It is frankly conceded that even if the statute had not contemplated the legislative jurisdiction of local governments, local authorities would probably have been consulted in their capacities as enforcement agencies for state law. However, this reference to local authorities, taken together with the purpose of the legislation to make the Indians full and equal citizens,[2] suggests that the local governments would assume the same role in relation to Indian citizens as they occupy with respect to the other citizens of the state. And when we examine the position of the average state citizen, we find that he is confronted with a panoply of overlapping and complementary legislation emanating from local and state lawmakers. If, with respect to a significant element of the population, local authorities were denied their customary and proper role in this scheme of regulation, the states would find it necessary to legislate on many subjects now wisely left to local authorities; all citizens, Indians included, would be denied

---

1. 25 U.S.C. § 231 states that the Secretary of the Interior shall permit state agents to enter on Indian lands to enforce health and education laws provided that self governing tribes have consented to this state authority.

2. See *Snohomish County v. Seattle Disposal Company,* 70 Wash.2d 668, 674, 425 P.2d 22, 27 (1967).

the benefits of local attention to local requirements.

■ One clause of the statute, taken by itself, appears to contradict this view of the role of local government under Public Law 280, that portion which reads: "* * * and the criminal laws of such State or Territory shall have the same force and effect within such Indian country *as they have elsewhere within the State or Territory.*" (emphasis supplied) If this language means that a law must apply the length and breadth of a state before it could be applied on Indian lands, then a county ordinance could not be enforced on a reservation inasmuch as it has no effect "elsewhere" in California than the county of origin. Considering the objectives of the statute, however, it is more reasonable to conclude that this phrase was inserted to assure equal treatment of the Indians with all other citizens and not to exempt Indian lands from local laws. If Congress had desired to limit the legislative authority of local government, and in so doing create a very unique relationship of Indians to the state, it could have done so by express language in the statute. The overwhelming evidence of the language and the legislative history and background show a contrary intention. Congress has shown no inclination to change the customary meaning of the phrase "law of a state" as it is usually interpreted.[3]

In California, city and county governments have the authority to make and enforce "all local, police, sanitary and other ordinances and regulations not in conflict with general laws." Cal.Const., Art. 11, § 7. It has been held that the power delegated to local government by this provision is "as broad as that of the legislature itself provided only that its exercise by any city must be confined to such city and must not conflict with the laws of the state." People v. Taylor, 33 Cal.App.2d Supp. 760, 761, 85 P.2d 978 (1938). In the matter of gambling, the state has a criminal statute which proscribes participation in certain specified games and types of games. Cal.Pen. Code § 330. Beyond this, local governments in the exercise of their general police power either permit or prohibit the establishment of public card rooms for the playing of card games not prohibited by the state statute. Thus it is that in many cities of California draw poker players may indulge their interest freely, while "hokey pokey" players are condemned by the law to inaction. It has been held that the state has not preempted the field of gambling regulation and that additional legislation is a proper subject for local decision. In re Hubbard, 62 Cal.2d 119, 41 Cal.Rptr. 393, 396 P.2d 809 (1964); People v. Mason, 261 Cal.App.2d 348, 68 Cal.Rptr. 17 (1968).

■ This subject of legislation is one where state and local authorities together prescribe the standards operative in a particular area. It would be as unlawful and as destructive of the full and equal citizenship of Indian citizens to exempt them from local laws on gambling as it would be to deny them specific benefits of county laws solely because of their Indian status.[4] Plaintiff argues that to allow the counties to exercise legislative authority over Indian lands would be to invite the expression of local hostilities and prejudice. There is no reason to assume that local governments are not qualified and disposed to render fair treatment to all of their citizens.

---

3. The Restatement of Conflicts, § 2b:
   The body of law of a state is not necessarily applicable equally to all persons or places within the state. Thus, different classes of persons or different localities may be governed by different laws, or local subdivisions of the state may be allowed by the state to make laws applicable in some particulars within their own boundaries. All such laws, however, form a portion of the law of the state.

4. In the case of Acosta v. County of San Diego, 126 Cal.App.2d 455, 272 P.2d 92 (1954), it was held that under federal and state law Indians residing in reservations are residents of the state and county for the purpose of receiving regular welfare benefits.

This suit was in fact occasioned by the Sheriff's declaration that "the laws of the State and the County are not made for a few, but meant to include everyone, and they shall be administered in that manner." The advantage of local regulation accrues to Indians as well as other citizens. In this case, the proper recourse is to convince the County Board of Supervisors that a change in the law is desirable; plaintiff need not attempt the more onerous task of convincing the state legislature.

■ It is next contended by plaintiff that if the county ordinance is a law of the state of California, then its enforcement on Indian trust lands is unlawful because it amounts to an encumbrance on those lands. The statute provides in part:

> "Nothing in this section shall authorize the alienation, encumbrance or taxation of any real or personal property, including water rights, belonging to any Indian or Indian tribe, band or community that is held in trust by the United States * * *." 18 U.S.C. § 1162(b).

It is asserted that the gambling ordinance on its face regulates the use of lands of the Rincon Reservation by prohibiting the operation of a card room. To reach this result, the court would have to apply the very broad definition of encumbrance adopted by the Washington Supreme Court in the *Snohomish* case. There the court forbade application of the county zoning ordinance because it was an encumbrance, defining that term as "any burden upon land depreciative of its value, such as a lien, easement or servitude, which, though adverse to the interest of the landowner, does not conflict with his conveyance of the land in fee"; a Washington decision was cited for the quoted language. 70 Wash.2d 668, 672, 425 P.2d 22, 26. Whatever the term encumbrance denotes in Washington law, this court finds no warrant for expanding the definition of encumbrance as that term appears in Public Law 280 beyond its usual application indicating a burden on the land imposed by third persons which may impair alienability of the fee, such as a mortgage, lien, or easement. See Snohomish County v. Seattle Disposal Company, 70 Wash.2d 668, 674, 425 P.2d 22, 28 (1967) (Dissenting Opinion). Cf. Kirkwood v. Arenas, 243 F.2d 863, 867 (9th Cir. 1957).

■■ The use of the word encumbrance in series with "alienation" and "taxation" indicates that Congress intended by these three words to protect the Indian from himself and swindlers, to prevent the taking of his lands by artifice or by law. Compare this language with similar terms employed for the same purpose in the Mission Indian Relief Act and the General Allotment Act, discussed in Kirkwood v. Arenas, *supra* at 866. Later in the same statute it is provided that nothing in the section "shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto." 18 U.S.C. § 1162(b). If all state laws regulating land use were made inapplicable by the earlier language describing encumbrances, then this language would be totally unneeded. In construing a statute, courts whenever possible avoid a construction which renders part of the statute superfluous. Consolidated Flower Shipments Inc., Bay Area v. Civil Aeronautics Board, 205 F.2d 449 (9th Cir. 1953).

Moreover, whether or not a zoning law such as that in the *Snohomish* case is an encumbrance, we are confronted here not with a zoning ordinance but with a criminal statute; even the broad definition of encumbrance adopted by the majority opinion in *Snohomish* would not require that this criminal statute be regarded as an encumbrance. This view has been expressed by the California courts in the case of People v. Rhoades, 12 Cal.App.3d 720, 90 Cal.Rptr. 794 (1970). There the defendant, an Indian living on trust lands, had been convicted of violating Public Resources Code § 4291, which required a person who owns any building on forested lands to main-

tain a fire break around the building. The court found that the word "encumbrance" was used in 18 U.S.C. § 1162 to protect the Indians from exploitation and alienation of their lands. The court noted that there was no basis for the position that the firebreak requirement would depreciate the value of property even if measured by the *Snohomish* standard. It went on to state:

> We do not accept the proposition * * * that Congress by its use of "encumbrance" intended to give Indians or Indian trust lands (alone among a state's inhabitants) a free ticket to endanger the state's forest and grass lands, an interpretation of the restrictive clause of Public Law 280 which is strained and unnecessary. *Id.* at 726, 90 Cal.Rptr. at 797.

■ There is no doubt that the card room would generate certain revenues for plaintiff even if operations there did not reach the impressive proportions seen by the Sheriff in his vision of a "little Las Vegas"; other activities classified as criminal conduct are even more lucrative. To take plaintiff's argument to its logical conclusion, it seems that the state could only prohibit Indians on trust lands from engaging in unprofitable criminal acts. It has always been permissible and necessary for a state in the exercise of its police power to regulate certain forms of conduct to promote the general welfare and to protect the health and well being of its citizens. The county ordinance is aimed squarely at conduct, not land use, and the fact that the scheme of enforcement also makes liable those who furnish the premises used for a forbidden activity is not enough to convert the statute into a zoning ordinance, much less an encumbrance within the meaning of Public Law 280.

Plaintiff's final claim is that the gambling ordinance may not be applied to Indian trust lands because it is inconsistent with federal statutes, regulations and policies. 18 U.S.C. § 1162(b) provides in part:

> "(b) Nothing in this section * * * shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement or statute or with any regulation made pursuant thereto * * *."

■ The first inconsistency found by plaintiff derives from an administrative regulation of the Secretary of the Interior which provides that none of the laws, ordinances or other regulations of a State or political subdivision which limit, zone or otherwise regulate the use of real or personal property shall apply to Indian trust lands unless the Secretary "in specific cases" adopts or makes applicable these laws to Indian trust lands. 25 C.F.R. § 1.4.[5] The Secretary has adopted zoning laws of the State of California, but he has decreed that such

---

5. The text of this regulation reads:

§ 1.4 State and local regulation of the use of Indian property. (a) Except as provided in paragraph (b) of this section, none of the laws, ordinances, codes, resolutions, rules or other regulations of any State or political subdivision thereof limiting, zoning or otherwise governing, regulating, or controlling the use or development of any real or personal property, including water rights, shall be applicable to any such property leased from or held or used under agreement with and belonging to any Indian or Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States. (b) The Secretary of the Interior or his authorized representative may in specific cases or in specific geographic areas adopt or make applicable to Indian lands all or any part of such laws, ordinances, codes, resolutions, rules or other regulations referred to in paragraph (a) of this section as he shall determine to be in the best interest of the Indian owner or owners in achieving the highest and best use of such property. In determining whether, or to what extent such laws, ordinances, codes, resolutions, rules or other regulations shall be adopted or made applicable, the Secretary or his authorized representative may consult with the Indian owner or owners and may consider the use of, and restrictions or limitations on the use of, other property in the vicinity, and such other factors as he shall deem appropriate.

laws or regulations of cities and counties would be adopted and applied by "separate action." 30 Fed.Reg. 8722.[6] He has not adopted the county ordinance in question. As the court has decided that this gambling ordinance is not a law regulating the use of property, the administrative regulation by its terms is inapplicable to this controversy.

In addition, this regulation is void insofar as it purports to enlarge or restrict the scope of jurisdiction afforded by Public Law 280. Madrigal v. County of Riverside, No. 70–1893–EC, C.D.Cal., Findings of Fact and Conclusions of Law dated February 16, 1971. It appears from the Secretary's initial public statement concerning this regulation that it is merely an interpretation of existing law [7] and as such is fully reviewable by the courts. For a state law to be unenforceable due to conflict, there must exist a conflict between it and a treaty, agreement, statute or a regulation made under the authority of one of these three types of laws. It has been held by the Supreme Court that the provisions of 25 U.S.C. §§ 2 and 9, granting to the President the power to prescribe regulations for the conduct of Indian affairs do not embody a general grant of power to make rules for Indian conduct but are merely authority to implement specific laws. Organized Village of Kake v. Egan, 269 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962). There the court found that 25 U.S.C. §§ 2 and 9 did not authorize regulations of the Secretary which allowed maintenance of fish traps outside an Indian reservation in conflict with laws of the State of Alaska. The court is unaware of any other authority for the Secretary to issue a "legislative" type of administrative regulation in this area. It is finally asserted that a conflict exists between the ordinance and federal policy toward the Indians to allow their independence and to encourage their economic self-sufficiency. Plaintiff points to 28 U.S.C. § 1360(c) as an expression of that policy:

Any tribal ordinance or custom heretofore or hereafter adopted by any Indian tribe, band or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section.

There is of course no conflict in the express terms of the statute, for it deals with civil law only and even there requires that a tribal ordinance yield to a contrary state civil law. There is no doubt that a residual sovereignty remains in Indian tribes even in those states where Public Law 280 operates. There is nothing in policy or law, however, which indicates that this limited self government inhering in the Indian tribes may rise to challenge state law. For the tribe to preempt the county ordinance means that the Rincon Band would be assuming a co-equal authority with the cities and counties which have legislated on this subject. To in effect constitute the Rincon Band a local government with authority comparable to that exercised by cities and counties under the provisions of Article 11. Section 7 of the California Constitution would require more than a policy authorization, and such authorization simply does not exist.

Accordingly, the court holds that the San Diego County gambling ordinance is in full force and effect on the Rincon Reservation and may be enforced there by defendants.

It is ordered that defendants' motion for summary judgment is hereby granted. It is further ordered that plaintiff's motion for summary judgment is denied.

6. See County of San Bernardino v. La Mar, 271 Cal.App.2d 718, 76 Cal.Rptr. 547 (1969).

7. 30 Fed.Reg. 6438 (May 8, 1965).